IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JOSEPH REINWAND,

                                      OPINION AND ORDER

          Plaintiff,

                                      14-cv-845-bbc

     v.

NATIONAL ELECTRICAL BENEFIT FUND,
LAWRENCE J. BRADLEY and
FRANK BLACKBURN, M.D.,

          Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

     In this civil action, pro se plaintiff Joseph Reinwand, a prisoner in the Columbia Correctional Institution in Portage, Wisconsin, contends that his disability benefits were terminated improperly by defendants National Electrical Benefit Fund, Lawrence J. Bradley (the executive secretary and treasurer for the fund) and Frank Blackburn (a reviewing physician who assists the fund in determining whether an applicant is medically disabled). In orders dated January 22, 2015 and March 3, 2015, I granted plaintiff leave to proceed on two claims under the Employee Retirement Income Security Act: (1) defendants suspended plaintiff's benefits in violation of his benefits plan and the statute, 29 U.S.C. §§ 1132-33; and (2) defendants failed to provide plaintiff the documents on his benefits decision, as required under 29 U.S.C. § 1132(c)(1).

     Defendants filed a motion to dismiss plaintiff's complaint under Fed. R. Civ. P.

1

12(b)(6), dkt. #14, contending that plaintiff failed to exhaust the administrative remedies available to him under the plan. They add that they have provided plaintiff all relevant documents he requested, so he has no plausible claim under § 1132(c)(1). Finally, defendants argue that defendants Bradley and Blackburn should be dismissed from the suit because, they say, individuals are not suable parties under ERISA unless otherwise set forth in the statute. 29 U.S.C. § 1132(d)(2).

I am dismissing defendant Blackburn from the suit because plaintiff has not alleged any facts that suggest he is liable under ERISA. However, defendants' motion will be denied in all other respects. First, defendants do not deny that defendant Bradley may be an "administrator" under the plan who may be subject to liability for failing to follow ERISA procedures. Furthermore, defendants have not shown that plaintiff's failure to exhaust cannot be excused by their failure to provide the appropriate denial letter as required under § 1133 of ERISA. Finally, plaintiff denies that he received all the documents he requested from defendants, so the claim cannot be resolved on defendants' motion to dismiss.

Plaintiff asks the court for assistance in recruiting counsel. Dkt. #22. Because he has not shown that he is indigent, his motion must be denied. Plaintiff also asks the court to establish discovery deadlines under Fed. R. Civ. P. 26. Dkt. #24. Because such deadlines are established by statute, Fed. R. Civ. P. 26-37, and because the deadline for conducting discovery will be established by Magistrate Judge Stephen L. Crocker at the pretrial telephone conference on September 10, 2015, this motion will be denied as moot.

BACKGROUND

Defendant National Electrical Benefit Fund provides benefit services for the national electrical contractors association. Plaintiff is a participant in the fund by virtue of his previous work. In or around May 1993, plaintiff began receiving benefits from the Social Security Administration as a result of a disability stemming from post traumatic stress disorder, insomnia, nightmares and a nervous disorder. Plaintiff received benefits from the fund based on the Social Security Administration's determination that he was disabled.

In or around May 2012, defendant National Electrical Benefit Fund learned that plaintiff was no longer receiving disability benefits from the Social Security Administration as a result of his incarceration. In September 2012, plaintiff sent the fund a "medical report" standard form issued by the fund. Dkt. #19. The report was signed by a medical professional and stated that plaintiff had "PTSD" and "insomnia" for which he had received long term treatment, including prescription medicine.

The fund suspended plaintiff's benefits in November 2012. In April 2013, the fund informed plaintiff that it required additional information to determine his disability status. (Defendants also say they wrote plaintiff in May 2013 and again requested further medical information. Defendants do not say whether they sought any specific information.) In January 2014, plaintiff submitted another medical report provided by the fund. Dkt. #18. This one was signed by a physician and stated that plaintiff suffered from posttraumatic stress disorder, insomnia and a history of alcohol abuse. When plaintiff had not heard back from the fund, he sent it a letter in May 2014, requesting a status update. Later that month,

the fund sent plaintiff a form letter signed by defendant Blackburn in which he had crossed out "PTSD" and marked "not disabled." Plaintiff wrote again for a status update in July 2014.

The fund's July 2014 letter in response reads as follows:

Dear Mr. Reinwand:

This acknowledges receipt of your letter dated May 14, 2014 regarding your NEBF disability benefits.
Please be advised, our physician has determined from the medical records you supplied to NEBF that you no longer qualify for disability benefits.
If you have any questions, please feel free to contact our office in writing or call and a participant service representative will be happy to assist you.

    Sincerely,

    Pension Services Representative
    Pension Services Department
    PCW

Dkt. #16, exh. #5.

On August 5, 2015, plaintiff asked the fund in writing for "any and all documents, information, correspondence, E-Mails, notes, case file records or other information used in my case for the physician to come to the conclusion that I am no longer qualif[ied] for disability benefits." Dkt. # 16, exh. #6. Defendant responded in a September 16, 2014 letter with two attachments: a copy of the medical report plaintiff submitted in January 2014 and a copy of the letter from defendant Blackburn to the Fund. Dkt. # 16, exh. #7.

4

OPINION

A. <u>Failure to Exhaust Administrative Remedies</u>

As an initial matter, I note that it is a rare case that may be disposed of on the issue whether plaintiff exhausted administrative remedies on a motion under Fed. R. Civ. P. 12(b)(6), which limits the court's review to the complaint and those documents attached to or incorporated in it. <u>Hecker v. Deere & Co.</u>, 556 F.3d 575, 582 (7th Cir. 2009). In this instance, the parties do not dispute the relevant facts but defendants' motion must be denied anyway.

Defendants argue that plaintiff's claim that his benefits were improperly suspended warrants dismissal or, in the alternative, remand, because plaintiff has failed to exhaust his administrative remedies before filing this suit in federal court. The Court of Appeals for the Seventh Circuit has consistently required plaintiffs to exhaust the administrative remedies available to them before bringing suit under ERISA. <u>Edwards v. Briggs & Stratton Retirement Plan</u>, 639 F.3d 355, 360 (7th Cir. 2011) ("[W]e have interpreted ERISA as requiring exhaustion of administrative remedies as a prerequisite to bringing suit under the statute."); <u>Powell v. A.T. & T.</u>, 938 F.2d 823, 825-26 (7th Cir. 1991) ("We take this opportunity to reaffirm this court's notion that a district court may properly require exhaustion of administrative proceedings prior to the filing of a claim."). The parties agree that plaintiff has not exhausted the administrative remedies set forth in the plan.

Generally, there are three circumstances under which a plaintiff's failure to exhaust administrative remedies will be excused: (1) using the administrative remedies would be

futile for the plaintiff; (2) the remedy provided by the administrative procedures is inadequate; or (3) the plaintiff lacks meaningful access to the administrative procedures. Orr v. Assurant Employee Benefits, 786 F.3d 596, 602 (7th Cir. 2015); Schorsch v. Reliance Standard Life Insurance Co., 693 F.3d 734 (7th Cir. 2012); Gallegos v. Mount Sinai Medical Center, 210 F.3d 803, 808 (7th Cir. 2000). In certain situations an inadequate notice of termination or an inadequate denial letter may provide a fourth circumstance because it constitutes a lack of meaningful access to review. Schorsch, 693 F.3d at 740; Aschermann v. Aetna Life Insurance Co., 689 F.3d 726, 730 (7th Cir. 2012). Under 29 U.S.C. § 1133, "every employee benefit plan shall[] provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant." Department of Labor regulations further provide that the notification letter must include the following:

> (i) The specific reason or reasons for the adverse determination;
>
> (ii) Reference to the specific plan provisions on which the determination is based;
>
> (iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;
>
> (iv) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review; [and . . . ]
>
> [(v)] If an internal rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol, or other similar criterion; or a statement that such a rule, guideline, protocol, or other

similar criterion was relied upon in making the adverse determination and that a copy of such rule, guideline, protocol, or other criterion will be provided free of charge to the claimant upon request[.]

29 C.F.R. § 2560.503-1.

Plaintiff says that he did not follow the administrative appeals procedure with the fund for two reasons. First, because the plan's language simply states that an appeals procedure is available, he does not consider the benefit plan's appeal procedure to be mandatory. Dkt. # 16, exh. #1, p. 5 ("You . . . shall be entitled to request that the Trustees reconsider your NEBF application by submitting a written request."). This argument is a nonstarter. Regardless of the plan language, the Court of Appeals for the Seventh Circuit has mandated administrative review, except in limited circumstances. Orr, 786 F.3d at 602.

Second, plaintiff says that defendants failed to provide him a written notice of denial that contained specific reasons for the denial of his disability benefits. Indeed, none of the letters the fund attached to its motion included the specific reasons for the termination of his benefits, a reference to the plan provision or internal rule or procedure on which the decision was made, a description of what information plaintiff should provide (or why such information was necessary) or a description of the plan's appeal process and review procedures. (The fund admits it did not send a "a typical 'denial' letter which would have included claims procedures." Dkt. #15, at 6.)

Instead, the letter that most closely resembles a "termination" notice (the May 2014 letter) states that the fund's "physician has determined from the medical records you supplied to NEBF that you no longer qualify for disability benefits." Dkt. #16, exh. #5.

7

The fund now says the problem with plaintiff's claim for benefits was not that the physician determined he was not disabled but that plaintiff failed to provide any medical records. Furthermore, the letter does not explain any further steps or information expected from plaintiff or whether this decision is an appealable one.  The letter says only to contact the fund if plaintiff has questions.  It is unclear how plaintiff was supposed to know from this letter whether his benefits were suspended or terminated and, if so, how he should proceed, although this information is required by § 1133 and the regulations.

It is true that the requirements from § 1133 apply only to notice letters on final, appealable decisions by plans, Robyns v. Reliance Standard Life Insurance Co., 130 F.3d 1231, 1237 (7th Cir. 1997), but it is the fund's position that it had made a termination decision from which plaintiff could have administratively appealed. Dkt. #15. Furthermore, not every defect in a final notice letter is a ground for excusing plaintiff from exhausting his administrative remedies.  Schorsch, 693 F.3d at 740.  However, in this case, the only reason the fund provides for its incomplete notice letter is that plaintiff gave "very limited medical records and correspondence."  Dkt. #15, at 6.  It does not follow from this that defendants were unable to provide plaintiff an explanation of the administrative procedures simply because he had not provided medical records previously.

Moreover, the fund's letter was not only incomplete but potentially misleading by telling plaintiff that he had been found not disabled on the basis of medical records when, in fact, it was the *lack* of medical information that meant the fund was unable to determine his disability status.  On two occasions, plaintiff completed the form defendants sent him

8

and followed up with requests for status updates. When plaintiff asked for further information and documentation, the fund did not explain its position any more clearly but simply returned documents he had already seen. The fund did not explain what further information plaintiff should have provided and did not explain whether its decision was appealable or how to appeal it. § 1133; 29 C.F.R. § 2560.503-1. In Aschermann, the plan told the plaintiff what information it lacked related to her claim and how to appeal its decision; in this case, it is not possible to find from the information provided by defendants that plaintiff had a "'reasonable opportunity' to supplement the file and receive a 'full and fair review' within [defendant's] bureaucracy." Aschermann, 689 F.3d at 732. Accordingly, I conclude that defendants have failed to show that this court should not excuse plaintiff's failure to exhaust the fund's administrative remedies. Their motion to dismiss on this ground must be denied.

## B. Document Request

Defendants also move to dismiss plaintiff's claim that defendants violated 29 U.S.C. § 1132(c)(1) when the fund failed to provide him documents related to the termination of benefits, as plaintiff requested. Section 1132(c)(1) imposes liability on any administrator "who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary."

Defendants contend that they did not fail to comply with plaintiff's document request because he said only that he wanted the documents on which the physician relied in

9

determining his qualifications for benefits. Dkt. # 16, exh. #4. (In plaintiff's August 2014 letter he requested "any and all documents, information, correspondence, E-mails, notes, case files records or other information used in my case for the physician to come to the conclusion that I am no longer qualif[ied] for disability benefits."). The fund then sent him the medical report from January 2014 and Dr. Blackburn's form letter, which defendants say are the only documents that fit the description in plaintiff's request. Plaintiff argues that defendants must have relied on other documents and that those have not been sent. Indeed, defendants do not say they have sent the September 2012 medical report or whatever documentation upon which they relied to learn that plaintiff was no longer receiving Social Security benefits. Thus, it is clear that the parties dispute whether plaintiff has received a complete set of documents and that plaintiff's contentions that defendants should have sent additional documents is plausible. Ashcroft v. Iqbal, 556 U.S. 662, 681 (2009). Accordingly, defendants' motion to dismiss this claim must be denied.

## C. Defendants Bradley and Blackburn

Defendants also seek to dismiss defendants Bradley and Blackburn from the case on the ground that plaintiff has failed to state a claim against them in their personal capacity. Under ERISA, a money judgment is enforceable against the plan as an entity and not against any other person unless such person is established in his individual capacity. 29 U.S.C. § 1132(d)(2); Jass v. Prudential Health Care Plan, Inc., 88 F.3d 1482, 1490 (7th Cir. 1996) ("ERISA permits suits to recover benefits only against the Plan as an entity.") (quoting

Gelardi v. Pertect Computer Corporation, 761 F.2d 1323, 1324 (9th Cir. 1985)). However, administrators may be liable under certain provisions, including § 1132(c)(1), which is one of the statutes under which plaintiff is suing, or when the administrator and plan are "closely intertwined." Mein v. Carus Corp., 241 F.3d 581, 585 (7th Cir. 2001). Because defendants do not say that defendant Bradley is not an administrator and because it is plausible that he is one because of his position as secretary and treasurer of the fund, he will not be dismissed from the suit at this time.

Nevertheless, plaintiff does not allege that defendant Blackburn, the physician working for the fund, did anything that violates ERISA or that he acted in any role other than in his position with the fund. Accordingly, I conclude that plaintiff has not stated a claim against defendant Blackburn and will dismiss him from the case.

### D. Motion for Assistance in Recruiting Counsel

Plaintiff has renewed his motion for assistance in recruiting counsel. Dkt. #22. As I explained to plaintiff in an order dated March 3, 2015, the court will assist him in recruiting counsel only if he is indigent. 28 U.S.C. § 1915(e)(1). Plaintiff says he cannot afford a lawyer, but he has not completed an affidavit showing his indigence, as he must do before I can consider his motion. I have attached a blank affidavit to this order, which he may fill out and file with the court. Any future motions for assistance in recruiting counsel that plaintiff files without first filing the indigence form attached to this order will be set aside and will be considered denied if the court does not act on them in 30 days after filing.

Furthermore, as I also explained to plaintiff in the March 3, 2015 order, plaintiffs must show that they have made efforts on their own to recruit counsel before the court will assist them. It is this court's general practice to require that plaintiffs provide copies of letters from at least three lawyers who have declined to represent them. Plaintiff says he has sought assistance on his own, but he provides no evidence. In the future, plaintiff should send copies of the letters lawyers send in response to his efforts, and, if the lawyers to whom he is writing do not respond, plaintiff should document the dates he sent his letters and provide the court a copy of the letters he sent the lawyers. Finally, I note that plaintiff says that he believes that he is at a disadvantage compared to defendants' lawyers in his ability to litigate this case. Nevertheless, plaintiff has not shown that he faces any hardships that are not faced by all other pro se parties, especially pro se prisoners. To date, plaintiff's filings have been complete, legible and persuasive. Accordingly, plaintiff's motion will be denied.

### E.  Discovery Deadlines

Plaintiff asks the court to issue an order "pursuant to . . . Fed. R. Civ. P. 26 establishing discovery dates and deadlines." Dkt. #24. The deadline for conducting discovery and other relevant deadlines will be established at the preliminary pretrial telephone conference before Magistrate Judge Stephen L. Crocker. That conference is set for September 10, 2015 at 1:30 pm. Further, if any of the parties submit a request for discovery to another party, the deadline for responding is set forth in Fed. R. Civ. P. 26-37 and will apply unless otherwise stipulated to by the parties or ordered by the court. Plaintiff

will receive additional information about sending and responding to discovery requests at the conference with the magistrate judge. If defendants do not timely respond to plaintiff's discovery requests, he may file a motion to compel discovery under Fed. R. Civ. P. 37, after he has first attempted to resolve the issue with defendants without the court's assistance.

ORDER

IT IS ORDERED that

1. The motion to dismiss plaintiff Joseph Reinwand's complaint, dkt # 14, filed by defendants National Electrical Benefit Fund, Lawrence J. Bradley and Frank Blackburn is GRANTED in part and DENIED in part. Defendant Blackburn is DISMISSED from the case. The motion is denied in all other respects.

2. Plaintiff's motion for assistance in recruiting counsel, dkt. #22, is DENIED without prejudice. Further, if plaintiff files another such motion without first filing the indigence form attached to this order, the motion for assistance in recruiting counsel will be set aside and will be considered denied if the court does not take action on it within 30 days after its filing.

3. Plaintiff's motion to establish discovery dates and deadlines, dkt. #24, is DENIED as moot.

Entered this 18th day of August, 2015.

BY THE COURT:
/s/

_____
BARBARA B. CRABB

District Judge