IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JOSEPH REINWAND,                                      OPINION and ORDER

        Plaintiff,                                      14-cv-845-bbc

    v.

NATIONAL ELECTRICAL BENEFIT FUND and
LAWRENCE J. BRADLEY,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      In this lawsuit against defendants National Electrical Benefit Fund and Lawrence J. Bradley, pro se plaintiff Joseph Reinwand contends that defendants violated his rights under the Employee Retirement Income Security Act by denying him disability benefits and failing to give his claim for benefits a full and fair review.  Plaintiff also contends that defendants violated 29 U.S.C. § 1132(c)(1) by failing to send him certain documents related to the denial of his claim.  Both plaintiff and defendants have filed motions for summary judgment on plaintiff's claims.

      I am granting plaintiff's motion for summary judgment with respect to his claim that defendants violated 29 U.S.C. § 1132(a)(1)(B).  As defendants concede, their failure to provide him an explanation for their denial of his claim for reinstatement rendered their decision arbitrary and capricious.  However, defendants' failure in this regard does not entitle plaintiff to reinstatement of his benefits; instead, plaintiff's claim must be remanded

1

to the plan administrator for further proceedings.

I am granting defendants' motion for summary judgment with respect to plaintiff's claim under 29 U.S.C. § 1132(c)(1).  First, the undisputed facts establish that defendants complied with plaintiff's document request and sent him the one and only document their reviewing physician considered in denying his claim.  Additionally, even if defendants had failed to provide plaintiff the specific documents he requested, the Court of Appeals for the Seventh Circuit has held that their failure in this regard does not give rise to civil penalties under 29 U.S.C. § 1132(c)(1).

From the parties' summary judgment materials and the record, I find that the following facts are not subject to genuine dispute.


UNDISPUTED FACTS

Plaintiff is a participant in the National Electrical Benefit Fund employee benefit plan, which is a multi-employer employee benefit plan governed by the Employee Retirement Income Security Act of 1974.  The plan offers participants various benefits, including a "Normal Retirement Pension Benefit," an "Early Retirement Pension Benefit" and a "Disability Pension Benefit."  The plan is sponsored by the National Electrical Contractors Association and International Brotherhood of Electrical Workers; the plan administrator is defendant Lawrence J. Bradley.

In January 1996, plaintiff applied for and began receiving social security disability benefits.  Under the defendant plan, if a participant qualifies for social security disability

2

benefits, he automatically qualifies for a disability pension benefit.  Plaintiff submitted a disability pension application to the plan in July 1998 stating that he was disabled because he had "post-traumatic stress disorder."  Plaintiff's application for a disability pension was approved based solely on the fact that he had been approved for social security disability benefits; plaintiff was not required to submit any medical records or other evidence related to his alleged disability.  Plaintiff began receiving monthly benefit checks in the amount of $460, beginning in April 1999.

In early 2012, plaintiff's monthly benefit check was returned to defendants as undeliverable.  Defendants sent letters to the forwarding address on file with the post office, asking plaintiff to provide an updated mailing address and confirm that he was still receiving social security disability benefits.  Plaintiff's daughter, Jolynn Reinwand, received and responded to defendants' letters in her capacity as plaintiff's agent and attorney-in-fact.  In responding to defendants' letters, Jolynn informed defendants that plaintiff no longer qualified for or received social security disability benefits.

Because plaintiff was no longer receiving social security disability benefits, defendants terminated his disability benefits under the plan.  In a letter dated May 9, 2012 defendants explained that plaintiff's disability benefit was based on his entitlement to social security disability benefits and that his ineligibility for social security disability benefits rendered him ineligible for a disability pension benefit under the plan.  Defendants' letter assumed that plaintiff's social security disability benefits had been discontinued because he had returned to work.  However, Jolynn Reinwand responded to defendants' letter, explaining that

plaintiff's social security disability benefits were not discontinued because he had gone back to work, but because he was incarcerated in February 2011 and was not eligible to receive social security disability benefits while in prison.

Defendants construed the letter submitted by Jolynn as a new application for a disability pension.  Under the plan a participant can receive a disability pension benefit despite being ineligible for social security disability benefits if the participant can present sufficient evidence to enable the plan administrator to determine independently that the participant is disabled and unable to work. Defendants sent plaintiff a "Medical Report" form, which is designed to elicit information about a participant's medical history so that the plan administrator can make an independent determination of the plaintiff's disability. Plaintiff's former physician completed the medical report form and stated that two years earlier, in September 2010, she had treated plaintiff for insomnia and post-traumatic stress disorder.  The form did not include any information related to the severity of plaintiff's condition or whether it rendered him unable to work.  Additionally, the medical report form was not accompanied by any medical records documenting plaintiff's condition or treatment.

Defendants forwarded the medical report to the plan's reviewing physician, Dr. Frank Blackburn for his opinion.  The letter accompanying the medical report asked Dr. Blackburn to determine whether plaintiff suffered from a "total disability" as defined by the plan. Defendants explained that under the plan, a "total disability" is "the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to . . . last for a continuous period of not less than twelve

months." Blackburn responded to defendant's letter by stating that the information in the medical report submitted by plaintiff was insufficient to permit him to make a determination as to plaintiff's disability.

Defendants wrote to plaintiff's attorney-in-fact on April 16, 2014 and again on May 22, 2013 requesting any additional documents that could be reviewed to determine whether plaintiff met the plan's definition of disabled. Defendants did not receive a response to either of these requests. Eventually, on November 21, 2013, plaintiff wrote defendants and asked why his disability benefits were suspended. Defendants responded by explaining that his benefits were terminated because he no longer qualified for social security disability benefits and the medical report form submitted on his behalf did not contain enough information to enable the plan administrator to render an independent decision with respect to his disability. Defendants sent plaintiff another medical report form and instructed him to submit more information documenting his disability, his treatment and how it affected his ability to work.

Another physician that treated plaintiff completed the blank medical report form defendants sent. This physician explained that plaintiff had been given a diagnosis of post-traumatic stress disorder in 1993 and that his post-traumatic stress symptoms recurred every year on the anniversaries of the deaths of his best friend and his wife. Plaintiff's best friend had been electrocuted to death and his wife had died from "a self-inflicted gunshot wound." (As it turns out, although plaintiff's wife's death had been ruled a suicide at the time, in the course of the investigation of plaintiff's 2008 murder of his daughter's ex-

5

boyfriend, facts came to light suggesting that plaintiff had been responsible for her death. Plaintiff was tried and convicted of murdering his wife in February 2016.)  Again, the physician completing plaintiff's form did not submit any medical records related to his condition or state that plaintiff's condition prohibited him from working.

Defendants sent plaintiff's medical record form to Dr. Blackburn for review. However, instead of stating that plaintiff submitted insufficient information, Dr. Blackburn determined from the scant evidence before him that plaintiff was "not disabled."  Dr. Blackburn did not identify the materials he considered or how he arrived at his decision. Relying on Dr. Blackburn's determination that plaintiff was not disabled, defendants denied plaintiff's request that his benefits be reinstated.  Defendants' decision was relayed to plaintiff in a form letter on July 14, 2014.

On August 5, 2014, plaintiff sent a letter to defendants requesting "any and all documents, information, correspondence, E-mails, notes, case file records or other information used in [his] case for the physician to come to the conclusion that [he] no longer qualified for disability benefits."  Plaintiff did not request either the formal plan documents or the plan's summary plan description.  Defendants responded on September 16, 2014 by sending plaintiff a copy of the medical report form submitted by plaintiff, as that was the only document considered by Dr. Blackburn in reaching his conclusion that plaintiff was not disabled.

6

OPINION

Plaintiff sets forth two distinct claims under ERISA:  (1) a claim for benefits under 29 U.S.C. § 1132(a)(1)(B); and (2) a claim alleging that defendants violated 29 U.S.C. § 1132(c), which gives courts discretion to penalize plan administrators for failing to comply with requests for certain documents ERISA requires them to provide participants.  I will address these two claims in turn.

A. Claim for Benefits Under 29 U.S.C. § 1132(a)(1)(B)

ERISA requires that all benefit plans provide participants an opportunity to submit claims for benefits and obtain "full and fair" review of those decisions.  In a lawsuit seeking a benefits under 29 U.S.C. § 1132(a)(1)(B), the district court's task is to review the plan administrator's decision to deny the participant the benefits he is seeking.  Where the plan gives the administrator discretionary authority to determine participants' eligibility for benefits or construe plan terms, the district court reviews the plan administrator's decision for an abuse of discretion under the "arbitrary and capricious standard."  Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  Here, the plan provides the plan administrator "full discretionary power and authority to construe and interpret the provisions of [the] plan" and "determine all questions of coverage and eligibility."  Accordingly, I must review the plan administrator's decision for abuse of discretion and determine whether it was "arbitrary and capricious."

I conclude that the plan administrator's initial decision to terminate plaintiff's

benefits was not arbitrary and capricious.  Plaintiff was eligible to receive disability benefits under the plan solely because he was receiving social security disability benefits.  As the plan administrator explained in its May 2012 letter, when plaintiff's eligibility for social security disability benefits changed, so did his right to receive plan benefits.  This decision was consistent with the plan's terms, which provide that benefits will "generally be terminated if . . . [a participant is] no longer receiving a Social Security Disability Benefit."

Although the initial decision to terminate plaintiff's benefits was not arbitrary or capricious, I reach a different conclusion with respect to the plan administrator's decision to deny plaintiff's request for reinstatement.  The Court of Appeals for the Seventh Circuit has held that a plan administrator's decision is arbitrary and capricious when it fails to "substantially comply with the ERISA requirement 'that specific reasons for denial be communicated to the claimant and that the claimant be afforded an opportunity for full and fair review by the administrator."  Tate v. Long Term Disability Plan for Salaried Employees of Champion International Corporation #506, 545 F.3d 555, 559-60 (7th Cir. 2008) (quoting Halpin v. W.W. Grainger, Inc., 962 F.2d 685, 688-89 (7th Cir. 1992)).  Defendants did not comply with this requirement.  After receiving plaintiff's medical reports documenting his medical conditions and treatment history, the plan administrator forwarded these to its reviewing physician, Dr. Blackburn, who rendered the opinion that plaintiff was "not disabled" without providing any explanation.  The plan administrator then communicated its decision to plaintiff in a similarly conclusory manner, stating without any explanation that "our physician has determined from the medical records you supplied [the

plan], that you no longer qualify for disability benefits."  Defendants concede that the cursory review and conclusory decisions rendered by the plan administrator and Dr. Blackburn rendered the denial of plaintiff's claim "arbitrary and capricious."  Accordingly, this decision must be overturned.  Hackett v. Xerox Corp. Long-Term Disability Income Plan, 315 F.3d 771, 774-75 (7th Cir. 2003) ("We will not uphold a termination when there is an absence of reasoning in the record to support it.").

The only question remaining with respect to plaintiff's claim under 29 U.S.C. § 1132(a)(1)(B) is the proper remedy.  When a court finds that a plan administrator's denial of benefits is arbitrary and capricious, it may either remand the case to the plan administrator for further proceedings or reinstate benefits.  Tate, 545 F.3d at 562-63. Defendants argue in favor of remand, or in the alternative, denial of benefits outright; plaintiff argues for reinstatement.  I agree with defendants that remand without reinstatement is appropriate.

Court-ordered reinstatement of benefits following an arbitrary and capricious decision by a plan administrator is appropriate in only two situations.  In the first situation, reinstatement is the proper remedy when it is "so clear cut that it would be unreasonable for the plan administrator to deny the application for benefits on any ground."  Quinn v. Blue Cross and Blue Shield Association, 161 F.3d 472, 477 (7th Cir. 1998) (quoting Gallo v. Amoco Corp., 102 F.3d 918 (7th Cir. 1996)).  It is far from "clear cut" in this case that plaintiff will be entitled to benefits on remand.  First, plaintiff submitted very little evidence to the plan administrator that he still suffered from post-traumatic stress disorder at the time

9

he submitted his request for reinstatement and he submitted no evidence that his disorder prevented him from performing "any substantial gainful activity."  Second, it is not clear whether a participant can recover disability benefits when, despite being disabled, he is unable to work because he is incarcerated; it stands to reason that the proximate cause of plaintiff's inability to work is his imprisonment, not his disability.  However, whether plaintiff is disabled and whether his imprisonment affects his ability to obtain benefits will have to be addressed by the plan administrator on remand and explained to plaintiff in accordance with defendants' obligation to afford plaintiff "full and fair review" under ERISA.

Plaintiff attempts to circumvent remand and have his benefits reinstated by arguing that under the plan, his benefits were vested and could not be terminated regardless whether his disability status has changed.  Plaintiff's interpretation of the plan is based on language in the claims letters he received, which state that plaintiff's "disability application for lifetime pension benefits was approved[.]"  Although plaintiff's claims letters refer to a "lifetime pension benefit," language in the claims letters plaintiff received does not control plaintiff's rights.  Plaintiff must instead point to language in the plan itself that supports his interpretation.  29 U.S.C. § 1102(a)(1).  As defendants point out, it is not "clear cut" under the plan whether a disability pension benefit is vested and unalterable even if the participant's disability status changes.  For example, the plan states that a "Disability Pension Benefit . . . [is] payable for the period of [a participant's] life *or the period of his disability*[.]"  Plan Doc. § 2, dkt. #56-1 (emphasis added).  One plausible interpretation of this plan provision is that participant's disability benefits terminate upon the participant's

10

death or until the participant is no longer disabled, whichever occurs first.  Resolving this dispute with respect to the proper interpretation of the plan falls to the plan administrator, who has "full discretionary power and authority to construe and interpret the provision of [the] plan."  Id. at § 20.

The second situation in which a court may order reinstatement of benefits following an arbitrary and capricious decision is when doing so is necessary to restore the status quo, such as "where the plan administrator *terminated* benefits under defective procedures." Hackett, 315 F.3d at 776-77 (emphasis added).  At first blush, it might appear that returning plaintiff to the position he was in prior to the plan administrator's arbitrary and capricious decision would require reinstatement because plaintiff was receiving benefits for more than a decade before they were terminated in May 2012.  However, unlike the situation in Hackett and Halpin v. W.W. Grainger, 962 F.2d 685, 688-89 (7th Cir. 1992), the plan administrator's decision to terminate plaintiff's disability benefits in May 2012 was not arbitrary or capricious.  Instead, the arbitrary and capricious decision requiring that the case be remanded was the plan administrator's cursory denial of plaintiff's request for reinstatement.  Plaintiff was neither receiving benefits nor entitled to them immediately prior to this decision.  Accordingly, reinstatement is not necessary to return plaintiff to the status quo ante.

11

### B. Claim for Civil Penalties Under 29 U.S.C. § 1132(c)

I am granting defendants' motion for summary judgment on plaintiff's claim that they failed to comply with 29 U.S.C. § 1132(c)(1).  Section 1132(c)(1) provides that a court has discretion to impose penalties and order such other relief as it deems proper to remedy a plan administrator's failure to furnish information which the administrator is required to furnish under ERISA.  Plaintiff contends that defendants violated 29 U.S.C. § 1132(c) by failing to comply with his request for "any and all documents, information, correspondence, E-mails, notes, case file records or other information used in [his] case for the physician to come to the conclusion that [he] no longer qualified for disability benefits."  However, it is undisputed that plaintiff's medical report was the only document Dr. Blackburn considered in denying plaintiff's claim and that this document was provided to plaintiff in response to his request.   Additionally, even if defendants did not comply with plaintiff's document request, the Court of Appeals for the Seventh Circuit has held that a failure to provide participants the evidence relied upon in denying a claim may be violative of ERISA's regulatory requirements, but it does not trigger statutory penalties under 29 U.S.C. § 1132(c)(1).  Wilczynski v. Lumbermens Mutual Casualty Co., 93 F.3d 397, 406-07 (7th Cir. 1996).


### ORDER

IT IS ORDERED that

1.  Plaintiff Joseph Reinwand's motion for summary judgment, dkt. #52, is

GRANTED with respect to his claim that defendants National Electrical Benefit Fund and Lawrence J. Bradley violated 29 U.S.C. § 1132(a)(1)(B) by failing to afford him full and fair review of his application for reinstatement of his disability benefits under the National Electrical Benefit Fund plan.  Plaintiff's motion for summary judgment is DENIED with respect to his claim that defendants violated 29 U.S.C. § 1132(c)(1).

2.  Defendants' motion for summary judgment, dkt. #54, is GRANTED with respect to plaintiff's claim that defendants violated 29 U.S.C. § 1132(c)(1).

3.  Plaintiff's claim is remanded to the plan administrator for "full and fair review" in accordance with ERISA.

4.  The clerk of court is directed to enter judgment in favor of plaintiff and close the case.

Entered this 24th day of June, 2016.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge